```
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
```

------------------------------------------------------------------ x
CONNECTICUT ASSOCIATION OF SCHOOLS, :
INC.,                               :
                                    :
                Plaintiff,          :
                                    :   25-CV-1156 (SFR)
        v.                          :
                                    :
CONNECTICUT INTERSCHOLASTIC ATHLETIC :
CONFERENCE, INC.,                   :
                                    :
                                    x
                Defendant.
------------------------------------------------------------------

## PRELIMINARY INJUNCTION ORDER

On July 21, 2025, the Connecticut Association of Schools, Inc. ("Plaintiff") filed a Verified Complaint against Defendant Connecticut Interscholastic Athletic Conference, Inc. ("Defendant") accusing Defendant of, among other things, unfair competition, cybersquatting, and trademark infringement in violation of federal and state law. With its Complaint, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 5. I held oral argument on the temporary restraining order ("TRO") request on July 24, 2025. On July 25, 2025, I entered a TRO taking effect on the date of entry and continuing to and including August 12, 2025. On August 6, 2025, Plaintiff filed a Verified Amended Complaint. ECF No. 23. On August 8, 2025, Plaintiff filed a Supplemental Motion for Preliminary Injunction. ECF No. 24. Plaintiff seeks a preliminary injunction enjoining the Defendant in the same manner as the TRO and granting various other relief. On August 12, 2025, I held a hearing on the request for a preliminary injunction. Following the hearing,

1

Plaintiff filed several declarations in support the request for a preliminary injunction.[1] I have reviewed the information in the Verified Amended Complaint, the Emergency Motion for Preliminary Injunction, the Supplemental Motion for Preliminary Injunction, the arguments made by Plaintiff at the hearing, and the declarations submitted by Plaintiff. For the reasons below, and pursuant to Federal Rule of Civil Procedure 65, I enter a preliminary injunction as described below. I take under advisement several requests made by Plaintiff in its Supplemental Motion.

I.  **BACKGROUND**

   A.  **Factual Background**

Plaintiff is a not-for-profit Connecticut corporation with a membership composed of elementary, middle, and high schools and associated individuals. Am. Compl. ¶ 6, 8, ECF No. 23.[2] Plaintiff coordinates and operates the Connecticut Interscholastic Athletic Conference, called "CIAC," which serves as the "regulatory agency for high school interscholastic athletic programs and works to assure quality experiences" for student athletes by providing support for member schools. *Id.* ¶¶ 12, 16. Defendant is a corporation organized and incorporated in Connecticut. *Id.* ¶ 5.

Plaintiff asserts that it has operated continuously for over a century and has used the CIAC name and acronym "as distinctive source identifiers of the products and services it

---

[1] At the hearing, Plaintiff provided the court with copies of the declarations from Glenn M. Lungarini, Executive Director of CAS-CIAC, and Erik Patchkofsky, Director of Physical Education of the Health & Athletics Department at New Haven Public Schools. Following the hearing, Plaintiff filed these declarations, along with a declaration from Matthew Scofield, Recreation Program Manager for the City of New Britain. ECF No. 30.

[2] The declaration of Lungarini, ECF No. 30-1, largely mirrors the Verified Amended Complaint.

offers." *Id.* ¶ 29. Plaintiff says it has used a particular stylized logo with CIAC over the outline of the State of Connecticut since at least early 2013. *Id.* ¶ 30. In its Amended Complaint and Motion, Plaintiff refers to the full CIAC name, CIAC and CAS-CIAC acronyms, and related logos as "CIAC MARKS." *Id.* ¶ 31. According to the Complaint, the continuous use of CIAC MARKS "has created a firm understanding on the part of the relevant consuming public that associates these identifiers with the offerings provided by CAS-CIAC." *Id.*

Plaintiff claims that, in April 2025, Defendant was registered with the Connecticut Secretary of State. *Id.* ¶ 41. Plaintiff further claims that "well after Plaintiff acquired protected and exclusive rights in its CIAC MARKS, Defendant began using in commerce and promoting marks identical to Plaintiff's CIAC MARKS," and that Defendant reached out to Plaintiff directly via email on July 9, 2025. *Id.* ¶¶ 48-49. According to the Amended Complaint, Defendant argued that "the fact that a business entity had been formed using the words 'Connecticut Interscholastic Athletic Association, Inc.' meant that [Plaintiff] could no longer use the CIAC MARKS" and demanded that Plaintiff cease use of the disputed marks. *Id.* ¶¶ 49-50. Plaintiff responded through counsel on July 10, 2025, demanding that the Defendant cease and desist from using the disputed marks no later than July 17, 2025. *Id.* ¶ 51.

Defendant subsequently posted messages on social media alleging that "CIAC is under new ownership," that Defendant is now the "official CIAC," and that Defendant has created new bylaws to govern interscholastic athletics in Connecticut. *Id.* ¶¶ 54, 60. Plaintiff also alleges that Defendant has reached out to Plaintiff's member organizations to urge them to stop paying their membership dues and contacted Plaintiff's partners and vendors to make representations that Defendant, not Plaintiff, is the true entity in charge of interscholastic

3

athletics in Connecticut. *Id.* ¶¶ 65-69. In its communications, Defendant has used Plaintiff's stylized logo. *Id.* Ex. 1, ECF No. 23.

Additionally, on July 21, 2025, after the Complaint was filed, Defendant filed a UCC-1 Financing Statement with the Connecticut Secretary of the State, which asserts a lien on Plaintiff's property and claims that Defendant is a secured creditor of the Plaintiff. *Id.* ¶¶ 72-73. Moreover, following the issuance of the temporary restraining order, Defendant continued to post on social media, with Defendant's President Malik Olsen representing Defendant as the next "evolution" of CIAC. *Id.*, Ex. 5.

### B. Procedural History

Plaintiff filed a Verified Complaint and Motion for Temporary Restraining Order ("TRO") on July 21, 2025. Compl., ECF No. 1; Emergency Mot. TRO, Mot. Prelim. Inj, ECF No. 5. I held a status conference on July 22, 2025. ECF No. 16. Present on the call was Plaintiff's attorney and Malik Olsen, the president of the Defendant corporation. *Id.* I scheduled oral argument on the TRO for July 24, 2025. *Id.* At the conference, I advised Mr. Olsen that corporations must be represented by counsel, and he represented that he would attempt to find counsel. During the conference, I advised Mr. Olsen of the time and location of the TRO hearing. *Id.* I subsequently heard oral argument on the TRO on July 24, 2025. ECF No. 18. Counsel for the Defendant did not appear at the hearing. *Id.* At the hearing, Plaintiff's counsel informed the court that Plaintiff properly served Defendant on July 22, 2025, and notified Mr. Olsen of the hearing directly by email. I entered a TRO on July 25, 2025 and scheduled a preliminary injunction hearing. TRO, ECF No. 21.

The TRO provides:

> From the date of this Order until and including August 12, 2025, the Defendant Connecticut Interscholastic Athletic Conference Inc. and its agents, servants, employees, and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation, is enjoined from:
>
> 1. Infringing on the use of the Plaintiff's common law trademarks: "CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE," CIAC, and the Plaintiff's CIAC Logo; and
>
> 2. Using the (1) "Connecticut Interscholastic Athletic Conference," (2) "CIAC," and (3) the CIAC logo in commerce in any fashion, or any other word, term, name, symbol, or device, or any combination thereof (including as its corporate name), or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

ECF No. 21. On August 6, 2025, Plaintiff filed a Verified Amended Complaint. Am. Compl., ECF No. 23. On August 8, 2025, Plaintiff filed a Supplemental Motion for Preliminary Injunction, ECF No. 24. The Verified Amended Complaint and the Supplemental Motion were served on the Defendant on August 8, 2025. ECF No. 27.

On August 12, 2025 I heard arguments on the preliminary injunction. At the argument, Plaintiff's counsel explained that Plaintiff seeks a preliminary injunction providing, in addition to the relief provided in the TRO, that

> Defendant, its agents, servants, officers, directors, employees, partners, representatives, successors, assigns, and all those persons or entities in active concert of participation with any of them who receive actual notice of the injunctive order, be enjoined from
> . . . .
>     (c) further acts of unfair and deceptive competition;
>     (d) further acts of unfair trade practices;
>     (e) aiding, assisting, or abetting any person or entity in doing any act enjoined by the Court; and

5

> (f) making any further misleading, false, fraudulent, and/or invalid security filings involving Plaintiff or any of its property.

Am. Compl., ECF 23, at 22. In addition, Plaintiff seeks an order "directing the defendant, its agents, servants, employees, and attorneys, and all other persons who are in active concert with those listed above who have notice of the Court's order, to take down and remove all posts, listings, webpages, and the like that use the Plaintiff's name or any of its marks enumerated in the Court's order." *Id.* at 24. Finally, as set forth in Plaintiff's supplemental Motion, Plaintiff seeks a preliminary injunction "directing Defendant Connecticut Interscholastic Athletic Conference Inc. to withdraw Connecticut Secretary of the State of Connecticut UCC-1 Financing Statement, Filing No. 0005316111" and "directing the Connecticut Secretary of the State to expunge and remove Filing No. 0005316111 from its database and files." Suppl. Mot. Prelim. Inj., ECF No. 24, at 2.

## II.    LEGAL STANDARD

To obtain a preliminary injunction, a movant must make a clear showing that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in his favor, and (4) an injunction is in the public interest. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (citing *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008)). A plaintiff need only show that there is a likelihood of success on the merits of at least one of its claims. *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 109 (S.D.N.Y. 2022).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

On the facts before me at this stage of litigation, I find that Plaintiff has established that it is likely to succeed on the merits of its Lanham Act infringement claim.

"To establish a Lanham Act infringement claim, plaintiff must establish (1) that 'the plaintiff's mark is entitled to protection,' and (2) that 'defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, No. 22-CV-1375 (GRB)(LGD), 2022 WL 3045038, at *3 (E.D.N.Y. Aug. 2, 2022) (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).

"[F]or an unregistered mark to be protectable, the 'mark must be sufficiently distinctive to distinguish' the mark owner's goods from those of others. To assess the distinctiveness of a mark, courts consider whether the mark is (1) generic; (2) descriptive; (3) suggestive; or (4) fanciful or arbitrary." *Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, 770 F. Supp. 3d 625, 635-36 (S.D.N.Y. 2025) (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006)). "Preliminary to making this showing, however, a plaintiff must demonstrate its own right to use the mark . . . in question." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) (citations omitted). "A party owns the mark in question if it made the first use of the mark to identify his goods or service and continues to use the mark commercially." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 516 (S.D.N.Y. 2022), *aff'd,* No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024) (internal quotation marks omitted).

As to the first element of a Lanham Act claim, Plaintiff alleges that it has used its CIAC MARKS since 1921, and the current stylized CIAC logo since 2013, while Defendant has only used the CIAC name since April 2025 and the CIAC logo since May 11, 2025. Pl.'s Mem. Supp. Emergency Mot. TRO & Prelim. Inj. 10 ("Pl.' Mem."), ECF 5-1. On these facts, Plaintiff clearly used its marks first and has continued to use them; therefore, they are owned by Plaintiff and I must evaluate whether the marks are sufficiently distinctive to distinguish them from other marks.

"To describe different degrees of inherent distinctiveness, the trademark law utilizes four categories. In order of ascending strength, they are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *RiseandShine Corp. v. PerpsiCo, Inc.*, 41 F. 4th 112, 120 (2d Cir. 2022). A descriptive mark tells "something about a product, its qualities, ingredients or characteristics." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993). A suggestive mark "suggests" rather than directly describes a product, sometimes requiring imagination to grasp the linkage; these marks are protectable without need to show acquired secondary meaning. *Id.* Arbitrary or fanciful marks, which lack any logical reference to the product or service which they are used, for example using the "Google" mark for a search engine, receive the strongest protection because other marketers of the same products or services have no justification for using the same terms in their own offerings. *Id.*

I here find that the CIAC mark is not generic, because does not refer to the "genus of which the particular product is a species"; for example, it contains no common names used to describe a class of products, "like automobile or pool." *See Jackpocket, Inc. v. Lottomatrick NY LLC*, 645 F. Supp. 3d 185, 238 (S.D.N.Y. 2022) (quoting *Abercrombie & Fitch Co. v.*

*Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). Instead, for the purpose of the preliminary injunction, I find that the CIAC MARKS are at minimum "suggestive" of the services offered by Plaintiff. Although the text which reads "Connecticut Interscholastic Athletic Conference" suggests a general geographic scope and link to school athletic activities, the actual products and services provided by Plaintiff are only hinted at in the logo and name of the organization. *See* Pl.'s Mem. 2; *RiseandShine*, 41 F.4th at 121. Therefore, for the purpose of the preliminary injunction, I find the marks are sufficiently distinctive to distinguish Plaintiff's services from other organizations, and therefore that the CIAC name, mark, and logo are protectable unregistered marks.

As to the second element, "[i]n a trademark infringement case, proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *Brennan's, Inc. v. Brennan's Rest.*, 360 F.3d 125, 129 (2d Cir. 2004); *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse*, 426 F.3d 532, 537 (2d Cir. 2005) (same).

To evaluate the likelihood of confusion, courts apply the "*Polaroid*" test, which requires consideration of eight elements: "(1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products; (4) the likelihood that the plaintiff will bridge the gap; (5) actual confusion; (6) the defendant's good faith in adopting the mark; (7) the quality of the defendant's products; and (8) the sophistication of the buyers." *Amplify Car Wash*, 770 F. Supp. 3d at 637; *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). I need not mechanically weigh each factor but must instead focus on the "ultimate question of whether consumers are likely to be confused." *Paddington Corp. v. Attiki Imps. & Distribs, Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).

9

The Second Circuit has defined the strength of a mark as "its tendency to identify the goods sold under the mark as emanating from a particular source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873 (2d Cir. 1986). Accordingly, when evaluating the strength of a mark, courts consider both the degree of distinctiveness of a mark and whether it has acquired secondary meaning. *See id.* Here, Plaintiff alleges in its Verified Amended Complaint that its continuous use of the CIAC MARKS and its efforts to promote itself under those marks have "created a firm understanding on the part of the relevant consuming public that associates these identifiers" with the services and products offered by Plaintiff and created substantial goodwill in the relevant segment of the market. Am. Compl. ¶¶ 31-34. These factors strongly suggest that the marks have acquired a secondary meaning related to the products and services offered by Plaintiff. Defendant has offered no evidence to contradict these assertions.

As to the second factor, there is a high degree of similarity between Plaintiff's marks and Defendant's marks, which contain all the same words, symbols, and design elements—they vary only in minor details like brightness and background color. Pl.'s Mem. 12. This factor therefore weighs in Plaintiff's favor.

The third factor also weighs in Plaintiff's favor. Defendant, according to its own public representations, is specifically operating in the same market and targeting the same members, vendors, and partners that Plaintiff targets. Am. Compl. ¶¶ 54-69. This shows that the two "products" being offered by Plaintiff and Defendant, specifically the bylaws and governance of interscholastic athletics in Connecticut, are competitively proximate.

The fourth factor is not at issue in this case. "Under this factor, if the owner of a trademark can show that it intends to enter the market of the alleged infringer, that showing helps to establish a future likelihood of confusion as to source." *Lois Sportswear*, 799 F.2d at

874. "These parties already operate within the same market. To the extent the defendants may offer services that the plaintiff does not, the plaintiff provides no indication that it intends to begin offering those services." *Amplify Car Wash* 770 F. Supp. 3d at 638.

The fifth factor considers whether actual confusion has occurred. Plaintiff has provided declarations indicating that actual confusion has resulted from Defendant's actions. In particular, the Recreation Program Manager for the City of New Britain describes receiving emails from Defendant's president stating that CAS-CIAC is no longer the governing body of Connecticut interscholastic athletics, and that CIAC Inc. is the entity responsible for organizing all state championship athletic events, including those held at Veterans Memorial Stadium in New Britain. Scofield Decl., ECF 30-3. One of the emails threatened legal action if the City of New Britain did not stop working with CAS-CIAC. *Id.* The Manager was confused by these emails and "did not know what was happening with CAS-CIAS." *Id.* In addition, the Director of Physical Education at the New Haven Public Schools has submitted a declaration explaining he was confused after receiving a call from Defendant's president representing that he would be the new CIAC. Patchkofsky Decl., ECF No. 30-2.

In any event, "evidence of intentional copying gives rises to a presumption of actual confusion" under the *Polaroid* test. *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 240 (S.D.N.Y. 2012) (quoting *Paddington*, 996 F.2d at 586-87). According to the Verified Amended Complaint, Defendant has contacted Plaintiff's members, vendors, and partners, representing itself as the new CIAC and "actively interfering with [Plaintiff]'s relationship with its members," vendors, and partners. Am. Compl. ¶¶ 65-69, ECF No. 23. These statements, taken together, suggest that Defendant has explicitly adopted Plaintiff's mark to directly supplant or usurp Plaintiff's business; these actions support a presumption of actual

11

confusion for purpose of the fifth *Polaroid* factor, which Defendant has not attempted to rebut. These same facts also support a finding that Defendant was not acting in good faith when it adopted these marks, satisfying the sixth *Polaroid* factor.

Factors seven and eight were not discussed at length in Plaintiff's Amended Complaint, and so I will not evaluate them at this stage.

I therefore find that for the purpose of the preliminary injunction the preceding factors weigh heavily in Plaintiff's favor, suggesting that Defendant's use of the CIAC marks is very likely to cause confusion. I thus conclude that Plaintiff has established a likelihood of success on the merits at this stage on the Lanham Act copyright claim and also on the Connecticut Unfair Trade Practices Act claim. *See Suisman, Shapiro, Wool, Brennan, Gray, & Greenberg, P.C. v. Suisman*, No. 3:04-CV-745 (JCH), 2006 WL 387289, at *13 (D. Conn. Feb. 15, 2006) ("a Lanham Act violation is an automatic CUTPA violation").

### B. Irreparable Harm

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). In a trademark infringement case, "[i]rreparable harm is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused.'" *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 299 (E.D.N.Y. 2015) (quoting *Lobo Enters., Inc. v. Tunnel Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)); *see also Johnson v. Mi Rancho, LLC*, No. 3:19-CV-00862 (MPS), 2021 WL 6498264, at *7 n.7 (D. Conn. Aug. 16, 2021) (finding that irreparable harm for injunctive relief can be met under the *Lobo* standard where there is "any likelihood that an appreciable

12

number of ordinarily prudent purchasers are likely to be . . . simply confused," and that such confusion can be shown by applying the *Polaroid* test).

As established above, I find that there is a high likelihood of consumer confusion under the *Polaroid* test, which constitutes irreparable harm for the purpose of the preliminary injunction test.

### C. Balance of Hardships and Public Interest

Finally, Plaintiff asserts that it will bear significant hardships given the potential "long-term reputational damage and the loss of members and other business relationships" resulting from Defendant's actions. Pl.'s Mem. 14. By contrast, Defendant has made no showing that any harm will result from a preliminary injunction prohibiting its use of the CIAC mark, name, and logo. On the facts laid out above, this preliminary injunction will serve the public interests of preventing unfair competition and confusion in the marketplace and protecting Plaintiff's legitimate interests in maintaining its long-held marks, name, and logo. Furthermore, I find that if Defendant continues to use Plaintiff's mark and logo, Plaintiff will suffer irreparable reputational and other injury that cannot be adequately remedied by monetary damages.

### IV. PRELIMINARY INJUNCTION

Therefore, on the record currently before me, I find that the evidence submitted by the Plaintiff shows it is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in Plaintiff's favor, and that the injunction is in the public interest. Pursuant to Federal Rule of Civil Procedure 65, Plaintiff is entitled to a preliminary injunction as set forth below.

From the date of this Order until the conclusion of this case, the Defendant Connecticut Interscholastic Athletic Conference Inc. and its agents, servants, employees, and attorneys, and

all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation, is enjoined from:

    1.    infringing on the use of the Plaintiff's common law trademarks: "CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE," CIAC, and the Plaintiff's CIAC Logo; and

    2.    using the (a) "Connecticut Interscholastic Athletic Conference," (b) "CIAC," and (c) the CIAC logo in commerce in any fashion, or any other word, term, name, symbol, or device, or any combination thereof (including as its corporate name), or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff

    3.    further acts of unfair and deceptive competition;

    4.    further acts of unfair trade practices;

    5.    aiding, assisting, or abetting any person or entity in doing any act enjoined by the Court; and

    6.    making any further misleading, false, fraudulent, and/or invalid security filings involving Plaintiff or any of its property.

Furthermore, Defendant, its agents, servants, employees, and attorneys, and all other persons who are in active concert with those listed above who have notice of this

order, are hereby ordered to take down and remove all posts, listings, webpages, and the like that use the Plaintiff's name or any of its marks enumerated in this order.

Plaintiff shall serve a copy of this order on Defendant and provide a copy to Mr. Malik Olsen. The Court takes under advisement Plaintiff's other requests contained in its Supplemental Motion for Preliminary Injunction. Suppl. Mot. Prelim. Inj., ECF No. 24, at 2.

**SO ORDERED.**

New Haven, Connecticut
August 12, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge